UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :     NO. 3:01CR00286(RNC) |
| v. | : |
| | :     NOVEMBER 18, 2004 |
| CHARLES J. HOBLIN | : |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

**I.    INTRODUCTION**

The Defendant, Charles Joseph Hoblin, respectfully files this memorandum as an aid to the Court in sentencing which is currently scheduled for Friday, December 3, 2004 at 11:00am in the United States District Court in Hartford, Connecticut in front of the Honorable Robert N. Chatigny, U.S.D.J. Based upon the review of the pre-sentence report, amendments and addendums, as well as discussions with Assistant United States Attorney Calvin Kurimai and United States Probation Officer Otto Rothi, undersigned counsel believes a dispute exists as to what Mr. Hoblin's United States Sentencing Guidelines range is.[1] While Mr. Rothi presents his proposed Guidelines calculation, see revised August 5, 2004 PSR ¶¶ 68-79, 110,[2] the undersigned submits that Mr. Hoblin's Guidelines range is one of the following: if *Blakely* applies: 0-6 months, based on a Total Offense Level of 4 and a Criminal History Category I; if *Blakely* does not apply, 12-18 months based on a Total Offense Level of 13 and a Criminal History Category I.

---

[1] Pursuant to the revised August 5, 2004 PSR ¶ 68, the November 1, 1995 Guidelines manual is being used because there are certain *ex post facto* considerations.

[2] The Guidelines calculation by United States Probation Officer Otto Rothi in his revised August 5, 2004 PSR is a *Total Offense Level 21*, comprised of the following: a base level of six (U.S.S.G. §§ 2F1.1 plus (i) a nine-point enhancement pursuant to a § 2F1.1(b)(1)(J) Specific Offense Characteristic for a total loss exceeding $350,000, plus (ii) a two-point enhancement pursuant to a § 2F1.1(b)(2)(A) Specific Offense Characteristic for the offense involved "more than minimal planning," plus (iii) a two-point enhancement pursuant to a § 3B1.3 Specific Offense Characteristic for "Abuse of Trust," plus (iv) a two- point Obstruction of Justice enhancement pursuant to § 3C1.1 for his perceived perjured testimony to both the grand jury and at trial. Mr. Rothi also suggests in his revised August 5, 2004 PSR ¶ 74 that Mr. Hoblin <u>not</u> receive a two-point downward adjustment for "Acceptance of Responsibility" pursuant to § 3E1.1(a).

## II. FACTUAL HISTORY

Standing before the Court is a 71-year old male who pled guilty on December 13, 2001 to one count of 18 U.S.C. § 1344, Bank Fraud, a Class B Felony. Counsel has worked closely with Charles Hoblin since their professional relationship began in 2001.

After a rather diversified background which is accurately articulated in Mr. Rothi's pre-sentence report (see revised August 5, 2004 PSR ¶¶ 80-105), Mr. Hoblin has most recently been working in a home-based accounting business with his wife in Chester, Connecticut, and has done so since 1992. Mr. Hoblin earns a modest income from that business.

Mr. Hoblin's associations with Ralph F. Vitale and Peter J. Trantino began in the winter of 1995, and the historical background relative to the bank frauds has been described by Mr. Hoblin in his letter to the Court dated January 9, 2002 and previously submitted. As a result of bad business judgments and self-admitted intimidation, Mr. Hoblin engaged in the submission of a series of false loan applications on behalf of Ralph Vitale, the proceeds of which were for the benefit of Mr. Vitale. In the course of his business association with Mr. Vitale, Mr. Trantino of Fleet Bank surfaced as a partner and co-conspirator of Mr. Vitale. As Mr. Hoblin professes, through the "subconscious fear" for his family and himself, he assisted his co-defendants in obtaining fraudulent loans. The specifics of each loan, the parties involved thereto, the false names utilized, and the ultimate losses sustained have been well-documented and are not disputed.

## III. SUMMARY OF LEGAL ARGUMENT

The Defendant, through counsel, submits that there are a series of legal arguments that must be presented to this Court prior to the entrance of any final sentence. A numbered list is being provided at the outset to assist the Court to understand those issues. First, the Defendant submits that his Total Offense Level is either 4 or 6. There are six bases for downward departure submitted, four objections to potential sentencing enhancements, and a final argument regarding the Defendant's potential entitlement to an Acceptance of Responsibility departure:

ITEMIZED SUMMARY

A. Defendant's Total Offense Level is a 4 if *Blakely* applies or a 13 if *Blakely* does not apply
B. Downward Departure pursuant to § 5H1.1 (age)
C. Downward Departure pursuant to § 5H1.3 (mental and emotional condition)
D. Downward Departure pursuant to § 5H1.4 (physical condition)
E. Downward Departure pursuant to § 5H1.5 (employment history)
F. Downward Departure pursuant to § 5H1.6 (family ties and responsibilities)
G. Downward Departure pursuant to § 5K2.0
   i. § 5K2.0(a)(4) departure – departures based on "not ordinarily relevant" offender characteristics – request for departure when §§ 5H1.1, 5H1.3, 5H1.4, 5H1.5 and 5H1.6 are considered collectively.
   ii. § 5K2.0(a)(3) departure – departures based on circumstances present to a degree not adequately taken into consideration – factor #1: the victimization of Defendant by the co-defendants, and factor #2 his substantial assistance to the Government.
H. Objection to § 2F1.1(b)(1)(J) enhancement (9-point "loss" enhancement) (if *Blakely* applies)
I. Objection to § 2F2.1(b)(2)(A) enhancement (2-point "more than minimal planning" enhancement)
J. Objection to § 3B1.3 enhancement (2-point "abuse of position of trust" enhancement)
K. Objection to § 3C1.1 enhancement (2-point "obstruction of justice" enhancement)
L. Defendant should receive 2-point Acceptance of Responsibility reduction (§ 3E1.1(a))

IV. **LEGAL ARGUMENT**

   A. **The Defendant's Federal Sentencing Guidelines range, should *Blakely* apply, is 0-6 months based on a Criminal History Category I and a Total Offense Level of 4. Alternatively, The Defendant's Guidelines range, should *Blakely* not apply, is 12-18 months based on a Criminal History Category I and Total Offense Level of 13.**

It is submitted that Mr. Hoblin's Federal Sentencing Guidelines range, should *Blakely* apply, is 0-6 months based on a Criminal History Category I and a Total Offense Level 6 or 4. Pursuant to USSG 2F1.1(a) (1995 Guidelines), the base offense level in this case is six (6). There is no argument that the base offense level does not apply because the indictment specifically charged Mr. Hoblin with violations of 18 U.S.C. § 1344 in the indictment. Since there has been no specific conduct that Mr. Hoblin stipulated to, Accordingly Mr. Hoblin's adjusted offense level is 6 or 4[3] and pursuant to *Blakely v. Washington* that offense level provides the relevant statutory maximum of 0-6 months based upon a Criminal History Category of I. As discussed *infra*, to arrive at this

---

[3] His Total Offense Level would be 4 if the Court were to incorporate the two-level Acceptance of Responsibility reduction pursuant to § 3E1.1(a).

3

conclusion is to assert that no enhancements should apply to the base offense level. Any sentence above this statutory maximum violates Ms. Hoblin's Sixth Amendment rights.

Alternatively, if *Blakely* does not apply, the Defendant's Guidelines range, should *Blakely* not apply, is 12-18 months based on a Criminal History Category I and Total Offense Level of 13. This conclusion is based on the calculation of the 1995 Guidelines §§ 2F1.1 base offense level of 6, plus a 9-point enhancement pursuant to the § 2F1.1(b)(1)(J) Specific Offense Characteristic for a total loss exceeding $350,000, minus a 2-point reduction for Acceptance of Responsibility pursuant to § 3E1.1(a). It is the Defendant's contention that, even if *Blakely* does not apply, no further enhancements should be applied in Mr. Hoblin's matter.

### B. This Court should downwardly depart pursuant to U.S.S.G. § 5H1.1 due to Mr. Hoblin's old age.

This Court should downwardly depart pursuant to § 5H1.1 due to Mr. Hoblin's old age. Although age is "ordinarily" not relevant pursuant to §5H1.1, it may be so in unusual cases or in combination with other factors. *See*, *e.g., United States v. Hildebrand*, 152 F.3d 756 (8th Cir. 1998) (affirmed downward departure for 70-year old from range of 51-63 months to probation with 6 months in home confinement where D bookkeeper for a group convicted of mail fraud and had life-threatening health conditions); *United States v. Dusenberry*, 9 F.3d 110 (6th Cir. 1993) (downward departure granted due to defendant's age and medical condition – removal of both kidneys requiring dialysis three times a week); *United States v. Baron*, 914 F.Supp. 660, 662-665 (D.Mass. 1995) (in bankruptcy fraud, downward departure from range of 27-33 months to probation and home detention to a 76-year old defendant with medical problems which could be made worse by incarceration); *see United States v. Moy*, 1995 WL 311441, at *25-29, *34 (N.D.Ill. May 18, 1995) (downward departure based upon defendant's advanced age, aggravated health condition, and emotionally depressed state).

It is submitted that Mr. Hoblin's age alone should be considered significant in analyzing whether a departure is warranted. Alternatively, if his advanced age is not enough alone to justify a departure, a combination of factors – including his advanced age, aggravated health condition, and emotionally depressed state – may be present to such a degree to warrant a departure. *See, infra, discussion at IV-F*.

**C. This Court should downwardly depart pursuant to U.S.S.G. § 5H1.3 due to Mr. Hoblin's extraordinary mental and emotional conditions.**

This Court should downwardly depart pursuant to § 5H1.3 due to Mr. Hoblin's extraordinary mental and emotional conditions. Once again, although age is "ordinarily" not relevant pursuant to §5H1.3, it may be so in unusual cases or in combination with other factors.

Mr. Hoblin's physical infirmities are documented in the PSR, more specifically in paragraphs 89 through 94. Due to those physical infirmities from which he currently suffers, it is submitted that Mr. Hoblin is much too fragile an individual to incarcerate at this stage in his life. Mr. Hoblin's suicidal tendencies are an indication of psychological infirmities which he suffers from. His employment of a psychologist (as described in paragraph 49 of the PSR) at my suggestion has enhanced his ability to cope with stress. That stress reached its pinnacle subsequent to his arrest in this matter. The sessions with his psychologist clarified the impact of the brother's death and its surrounding circumstances, as well as how "trapped' he felt when dealing with Ralph Vitale.

**D. This Court should downwardly depart pursuant to U.S.S.G. § 5H1.4 due to Mr. Hoblin's extraordinary physical condition.**

U.S.S.G. §5H1.4 makes "physical appearance including physique" not "ordinarily" relevant, but may be so in unusual cases. *See United States v. Gee*, 226 F.3d 885 (7th Cir. 2000) (downward departure under §5H1.4 based on health not abuse of discretion where judge reviewed 500 pages of medical records and where judge concluded that "imprisonment posed a substantial risk to [defendant's] life,"); *United States v. Johnson*, 71 F.3d 539, 545 (6th Cir. 1995) (under

5

U.S.S.G. §5H1.4, although "rare," downward departure possible for physician convicted of distribution of drugs and mail fraud based on his medical condition where defendant was a 65-year-old man who suffered from diabetes, hypertension, hypothyroidism, ulcers, potassium loss, and reactive depression, but specific findings required); United States v. Streat, 22 F.3d 109, 112-13 (6th Cir. 1994) (remanded to district court observing that court has discretion to depart because of defendant's "extraordinary physical impairment"); *United States v. Long*, 977 F.2d 1264, 1277-78 (8th Cir. 1992) (D's extreme vulnerability to victimization in prison justifies downward departure where four doctors said so); *United States v. Lara*, 905 F.2d 599, 605 (2d Cir. 1990) (same); *United States v. Gigante*, 989 F.Supp. 436 (E.D.N.Y. 1998) (despite vicious criminal past as Mafioso, downward departure granted from 262 months to 144 months because of advanced age (69) and bad heart); *United States v. Baron*, 914 F.Supp. 660, 662-665 (D.Mass. 1995) (in bankruptcy fraud, downward departure from range of 27-33 months to probation and home detention to a 76-year old defendant with medical problems which could be made worse by incarceration); see *United States v. Moy*, 1995 WL 311441, at *25-29, *34 (N.D.Ill. May 18, 1995) (downward departure based upon defendant's advanced age, aggravated health condition, and emotionally depressed state); *United States v. Roth*, 1995 WL 35676, at *1 (S.D.N.Y. Jan. 30, 1995) (63-year-old defendant with neuromuscular disease had "profound physical impairment" warranting downward departure under the Guidelines).

### E. This Court should downwardly depart pursuant to U.S.S.G. § 5H1.5 due to Mr. Hoblin's extraordinary employment history.

This Court should downwardly depart pursuant to U.S.S.G. § 5H1.5 due to Mr. Hoblin's extraordinary employment history. *See United States v. Thompson*, 74 F.Supp.2d 69 (D.Mass. 1999) (departure from 87 to 60 months in drug case-setting out framework for determining when employment history and family ties warrant downward departure as extraordinary – here "not only did defendant exhibit a sustained commitment to his family dating back to the instant he became a

father, he consistently worked to provide for them"), *reversed on other grounds*, 234 F.3d 74 (1st Cir. 2000) (district court erred in limiting its inquiry to cases involving crack cocaine dealers and then asking whether defendant's record stood apart from the rest); *United States v. Jones*, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered the defendant's "long impressive work history ...where good jobs are scarce."); *United States v. Alba*, 933 F.2d 1117 (2d Cir. 1991) (long-standing employment at two jobs); *United States v. Jagmohan*, 909 F.2d 61 (2d Cir. 1990) (exceptional employment history and nature of the crime); *United States v. Big Crow*, 898 F.2d 1326, 1331-32 (8th Cir. 1990) (excellent employment record).

Mr. Hoblin has a comprehensive employment record which appears at paragraphs 53 through 61 of the PSR. Furthermore, Mr. Hoblin has submitted letters from business associates to whom full disclosure of his actions has been made, and notwithstanding that disclosure, they have documented their support of him and have expressed a real desire to continue a business association with him in the future.

**F.  This Court should downwardly depart pursuant to U.S.S.G. § 5H1.6 due to Mr. Hoblin's extraordinary family ties and responsibilities.**

This Court should downwardly depart pursuant to § 5H1.6 due to Mr. Hoblin's extraordinary family ties and responsibilities. There are extraordinary family situations and/or responsibilities that exist in Mr. Hoblin's case to such an extent that incarceration would have an extraordinary effect on innocent family members. *United States v. Owens*, 145 F.3d 923 (7th Cir. 1998) (affirmed downward departure from level 32 (169 to 210 months) to 120 months under 5H1.6 for defendant convicted of possession of crack cocaine with intent to distribute where "he maintained a good relationship with his [three] children"; he also spent time every day with a brother who suffered from Downs Syndrome and where common law wife testified that if the

7

defendant went to prison "she might have to move to public-assisted housing and receive welfare benefits."); *United States v. Haversat*, 22 F.3d 790 (8th Cir. 1994) (in antitrust case where husband's care is critical to well-being of mentally ill wife, downward departure acceptable, but not to probation); *United States v. Ekhator*, 17 F.3d 53 (2d Cir. 1994) (even where Defendant agreed not to ask for downward departure court may do so *sua sponte* if unusual family circumstances); *United States v. Gaskill*, 991 F.2d 82, 85-86 (3d Cir. 1993) (remanded for court to consider downward whether departure to house confinement or probation warranted under §5H1.6 where defendant only care-provider to mentally ill wife, no danger to community – indeed benefit to it by allowing D to care for wife – and only short period of incarceration called for); *United States v. Johnson*, 964 F.2d 124, 128-130 (2d Cir. 1992) (where D was a single mother responsible for three young children and young child of her institutionalized daughter, depart not because D has lesser culpability but because "*we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing*"(italics added)); *United States v. Tineo*, 2000 WL 759837 (S.D.N.Y. June 8, 2000) (downward departure is warranted if "incarceration in accordance with the Guidelines might well result in the destruction of an otherwise strong family unit" in credit card fraud departure from 10 to 16 months to probation is warranted where mother sole financial support of three young children).

As illustrated in Mr. Hoblin's letter dated January 9, 2002, as well as a supporting letter written by his wife, the tragic events leading to the death of his brother in New York had a significant impact upon him. While it doesn't justify criminal conduct, it does appear as though his brother's death, as well as the ultimate takeover of the family business in New York, was orchestrated by members of organized crime. Mr. Hoblin has a loving family that has stood by him throughout this entire ordeal. His wife, Eileen, has submitted a letter of support for her husband.

Additionally, Mr. Hoblin is the sole support of his wife, Eileen, who will be 76 years old in January 2005. She is physically limited to a great extent, and those limitations are partially due to

residual effects of an automobile accident which occurred when she was a teenager. Her physical limitations include her difficulty standing and climbing and descending stairs. His wife also has high blood pressure and hypertension. Mr. Hoblin does the majority of household chores, including the laundry, the cooking and the dishes. He is her sole support – the money he earns (in addition to his Social Security income) is used to support her, and that income will diminish once he is incarcerated. Alternatively, if the Social Security benefits continue, the Government may deduct the cost of incarceration from those benefits, leaving his wife with a fraction of its original amount.

> **G. The Court Has Substantial Authority To Depart Downward from the Applicable Guidelines Range Through Application of 18 U.S.C. § 3553 and Federal Sentencing Guidelines § 5K2.0.**

Both 18 USC § 3553(b) and § 5K2.0 of the Federal Sentencing Guidelines (2003 edition) instructs a sentencing court that it may impose a sentence outside the range established by the applicable guidelines if there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. It is submitted that, pursuant to § 5K2.0(a)(4),[4] those departures based on "not ordinarily relevant" offender characteristics discussed *supra* – request for departure pursuant to U.S.S.G. §§ 5H1.1, 5H1.3, 5H1.4, 5H1.5 and 5H1.6 – are present to an exceptional degree when considered collectively.

Additionally, it is submitted it, pursuant to § 5K2.0(a)(3), this Court does have the authority to downwardly depart because there are departures based on circumstances present to a degree not adequately taken into consideration by the Sentencing Commission. Those factors which are present in this manner are the following: factor #1: the victimization of Defendant by the co-defendants, and factor #2 his substantial assistance to the Government.

---

[4] The references to § 5K2.0 are to the 2003 edition of the Guidelines which was rewritten in 2003 in response to the directives of the PROTECT Act. Due to footnote 2 in this memorandum, however, it appears that, pursuant to § 1B1.11 of the Guidelines, the provisions of § 5K2.0 from the 1995 Guidelines would apply. There does not seem to be a big difference between the two for purposes of this particular case.

As he became more involved with Ralph Vitale, Mr. Hoblin was led to believe that Mr. Vitale was "connected" to organized crime. Whether or not Mr. Hoblin could have walked away, or whether he felt trapped and was forced to continue his associations with Mr. Vitale, is an area of psychological discussion beyond the comprehension of this writer. It is respectfully requested that the Court consider Mr. Hoblin's post-arrest and pre-plea conduct by employing a psychologist – a degree of rehabilitation, and thereby fashioning a sentence individualized and appropriate to him.

As for the substantial assistance that was provided to the Government, there is a contention that Mr. Hoblin was not totally forthcoming in his assistance. It is asked that the Court consider the assistance that was provided – including that assistance that led to the conviction of Ralph Vitale.

**H. If *Blakely* applies, then the 9-point "loss" enhancement pursuant to § 2F1.1(b)(1)(J) is unconstitutional pursuant to *Blakely, Booker* and *Fanfan*.**

If *Blakely* applies, the 9-point "loss" enhancement pursuant to § 2F1.1(b)(1)(J) is unconstitutional pursuant to *Blakely, Booker* and *Fanfan*. At ¶ 70 of the revised August 5, 2004 PSR, a 9-level upward adjustment pursuant to § 2F1.1(b)(1)(J) of the 1995 Guidelines is proposed if it is believed that the total loss exceeded $350,000. Mr. Hoblin objects to this nine level enhancement pursuant to *Blakely v. Washington, United States v. Booker* and *United States v. Fanfan*. A jury has not found this fact beyond a reasonable doubt, nor did he admit to these facts in her plea of guilty. Accordingly, this nine level enhancement increased Mr. Hoblin's relevant statutory maximum which neither the Sixth Amendment or *Blakely* allows.

If *Blakely* does not apply in this instance (whether due to the holding in the Second Circuit decision in *United States v. Mincey* or because the United States Supreme Court has reversed the rulings in *United States v. Booker* and *United States v. Fanfan*,) then the parties agree that this enhancement would be an appropriate one in this instance.

I.  **The 2-point "More Than Minimal Planning" enhancement pursuant to § 2F1.1(b)(2)(A) is improper whether or not *Blakely* applies.**

If *Blakely* should apply, it is submitted that the 2-point "More Than Minimal Planning" enhancement pursuant to § 2F1.1(b)(2)(A) is unconstitutional pursuant to *Blakely, Booker* and *Fanfan*. At ¶ 71 of the revised August 5, 2004 PSR, Mr. Rothi proposes that Mr. Hoblin should receive a 2-level enhancement pursuant to § 2F2.1(b)(2)(A) due to the allegation that more than minimal planning took place by the Defendant. Specifically, the PSR states that "the defendant as an accountant by repeatedly using his clients' personal financial information was able to obtain at least five loans from Fleet Bank.." Mr. Hoblin was not provided with notice of this potential enhancement in the indictment, nor did a jury find this fact beyond a reasonable doubt, nor did he admit to these facts in her plea of guilty. Accordingly, this two level enhancement increased Mr. Hoblin's relevant statutory maximum which neither the Sixth Amendment or *Blakely* allows.

Even if *Blakely* does not apply, this enhancement is still improper because the Defendant submits that he did not embark on a "systematic scheme" of criminal conduct which could be considered enough to trigger the enhancement under this subsection. The mere fact that his clients' personal financial information was used to obtain bank loans is not, in and of itself, sufficient for this enhancement to apply. Courts have found that, for example, defendant have engaged in "more than minimal planning" where the facts showed a "systematic scheme involving multiple banks and many different parties" to conceal information from a bankruptcy court, *see United States v. Beard*, 913 F.2d 193 (5th Cir. 1990), a combination of kidnapping and theft to facilitate an escape and a rather elaborate theft scheme, *see United States v. White*, 903 F.2d 201 (5th Cir. 1990), and establishment of a paper trail to conceal a false claim of gun ownership, *see United States v. Lennick*, 917 F.2d 974 (7th Cir. 1990).

### J. The 2-point "Abuse of Position of Trust" enhancement pursuant to § 3B1.3 is is improper whether or not *Blakely* applies..

If *Blakely* applies, it is submitted that the 2-point "Abuse of Position of Trust" enhancement pursuant to § 3B1.3 is unconstitutional pursuant to *Blakely, Booker* and *Fanfan.* At ¶ 71 of the revised August 5, 2004 PSR, Mr. Rothi proposes that Mr. Hoblin receive a 2-level enhancement pursuant to § 3B1.3 due to the allegation that an abuse of trust took place. Specifically, the PSR states that "as an accountant the defendant was in a position of private trust by his clients. He violated this trust by using his client's personal financial information, without their position, and knowledge, to fraudulently obtain bank loans from Fleet Bank. Accordingly, a two-level enhancement for abuse of position of trust is recommended."

Again, Mr. Hoblin objects to this two (2) level enhancement pursuant to *Blakely v. Washington, United States v. Booker* and *United States v. Fanfan.* Mr. Hoblin was not provided with notice of this potential enhancement in the indictment, nor did a jury find this fact beyond a reasonable doubt, nor did he admit to these facts in her plea of guilty. Accordingly, this two level enhancement increased Mr. Hoblin's relevant statutory maximum which neither the Sixth Amendment or *Blakely* allows.

Even if *Blakely* does not apply, this enhancement is still improper because the Defendant's conduct does not fall within the conduct under this particular enhancement. It is submitted that the facts as they exist in this case can be distinguished from other cases where the enhancement has applied. For example, in *United States v. Nuzzo*, 2004 U.S. App. LEXIS 20631 (October 1, 2004), the Second Circuit recently provided examples of when a defendant's position of trust contributed to the commission or concealment of a crime, including: an armed security guard, a co-conspirator in a robbery, used information to which he had access by virtue of his position to provide necessary details to his co-conspirators, *see United States v. Parker*, 903 F.2d 91, 104 (2d Cir. 1990); chief officers of financial institutions used authority afforded to them by their positions to misallocate

12

bank funds and to subsequently conceal those misallocations, *see United States v. McElroy*, 910 F.2d 1016, 1027-28 (2d Cir. 1990); and a postal worker used his superior position with the United States Postal Service that afforded him access to large amounts of cash without accounting controls, *see United States v. Melendez*, 41 F.3d 797, 799 (2d Cir. 1994).

### K. The 2-point "Obstruction of Justice" enhancement pursuant to § 3C1.1 is unconstitutional because (i) the Defendant did not obstruct justice and (ii) due to the decisions in *Blakely, Booker* and *Fanfan*.

The 2-point "Obstruction of Justice" enhancement pursuant to § 3C1.1 is unconstitutional because (i) the Defendant did not obstruct justice and (ii) due to the decisions in *Blakely, Booker* and *Fanfan* which (may) find the enhancement unconstitutional.

It is submitted that Mr. Hoblin did not obstruct justice in this matter. Due to his advancing age, the Defendant made every single effort since the commencement of this matter in 2001 to cooperate with federal authorities and provide thorough and truthful information in this case. Case law relevant to this issue has demonstrated that obstructive conduct must be "material;" that is, it must have some impact on the investigation or prosecution of the federal offense. *See, e.g., United States v. Zagari*, 111 F.3d 307, 328-29 (2d Cir. 1997); *United States v. Griffin*, 310 F.3d 1017 (7th Cir. 2002). Materiality have been found where defendant's conduct had the potential to weaken the government's case or prolong the pendency of the charges. *See, e.g., United States v. Maccado*, 225 F.3d 766 (D.C. Cir. 2000). The defendant's conduct is material if it sends the investigators on the wrong trail. *See, e.g., United States v. Phipps*, 319 F.3d 177 (5th Cir. 2003). An enhancement is improper where the defendant's conduct does not significantly impede the investigation. *See, e.g., United States v. Ahmed,* 324 F.3d 368 (5th Cir. 2003). It is submitted that Mr. Hoblin's words and actions did not "significantly impede the investigation," and therefore the enhancement should not apply to him.

Alternatively, Mr. Hoblin objects to this two (2) level enhancement pursuant to *Blakely v. Washington, United States v. Booker* and *United States v. Fanfan.* Mr. Hoblin was not provided with notice of this potential enhancement in the indictment, nor did a jury find this fact beyond a reasonable doubt, nor did he admit to these facts in her plea of guilty. Accordingly, this two level enhancement increased Mr. Hoblin's relevant statutory maximum which neither the Sixth Amendment or *Blakely* allows.

**L. Defendant should receive 2-point Acceptance of Responsibility reduction pursuant to § 3E1.1 because he clearly demonstrated acceptance of his responsibility for this offense.**

Lastly, Defendant should receive 2-point Acceptance of Responsibility reduction pursuant to § 3E1.1(a) because he clearly demonstrated acceptance of his responsibility for this offense. Mr. Hoblin entered a guilty plea in December of 2001 and at that time accepted responsibility for his actions. According to certain federal sentencing texts, the Sentencing Commission has sent mixed signals over the years about whether a defendant must accept responsibility for relevant conduct beyond the offense of conviction to be eligible for a reduction for acceptance of responsibility. *See* Haines, et al., *Federal Sentencing Guidelines Handbook, November 2003 edition,* West Group, p. 1149. While some courts have denied the adjustment based on the defendant's false denial of relevant conduct, the Second Circuit has found that the defendant's acceptance of responsibility to be unaffected by the relevant conduct. *See United States v. Ruggiero*, 100 F.3d 284 (2nd Cir. 1996) (upholding acceptance credit despite false denial of relevant conduct); *see also United States v. Forte*, 81 F.3d 215, 218 (D.C. Cir. 1996) (suggesting in dicta that a defendant's lies about relevant conduct are "merely a factor in the trial judge's decision, not a trump"). With this in mind, it is submitted that the Defendant's actions in this case do not prohibit him from receiving the reduction under § 3E1.1(a).

**V.     CONCLUSION**

It is submitted that the totality of circumstances involved in the offense, the post-offense rehabilitation, the arguments provided within and the sundry other considerations the Court must consider in fashioning an appropriate individualized sentence, it is respectfully requested that, should *Blakely* apply, this Court impose a sentence within either Zone A or Zone B of the United States Sentencing Guidelines Sentencing Table. This request is consistent with the Mr. Hoblin's aspiration to avoid a sentence of incarceration. His history, health, age, extreme remorse and embarrassment collectively suggest his remoteness for recidivism. If *Blakely* does not apply, the Defendant asks that it consider the Defendant's Guidelines proposal of 12-18 months based on a Criminal History Category I and Total Offense Level of 13, and further consider downwardly departing consistent with the legal arguments set forth in this memorandum.

Respectfully submitted this 18th day of November, 2004.

Respectfully submitted,

THE DEFENDANT
CHARLES JOSEPH HOBLIN

By   /s/  Frank J. Riccio                        .
FRANK J. RICCIO
Attorney for the Defendant
Law Offices of Frank J. Riccio LLC
P.O. Box 491
Bridgeport, CT 06601
Fed Bar # 00148
(203) 333-6135 (phone)
(203) 333-6190 (fax)

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above date to Calvin Kurimai, Esq., Assistant US Attorney, Office of the United States Attorney, 157 Church Street, 23rd Floor, New Haven, Connecticut, 06510, to Otto Rothi, United States Probation Officer, United States Courthouse, 450 Main Street, Room 735, Hartford, CT 06103; and a complimentary chambers copy to the Honorable Robert N. Chatigny, U.S.D.J., United States District Courthouse, 450 Main Street, Hartford, CT 06106.

                                        By  /s/  Frank J. Riccio                     .
                                                FRANK J. RICCIO
                                                LAW OFFICES OF FRANK J. RICCIO LLC