UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 3:02CR286(RNC) |
| v. | : | |
| CHARLES J. HOBLIN | : | December 30, 2004 |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through undersigned counsel, respectfully submits this memorandum in aid of the sentencing in the above-captioned case.

### BACKGROUND

On December 13, 2001, the defendant, Charles J. Hoblin, pleaded guilty before United States Magistrate Judge Donna F. Martinez, to an Information charging him with one count of bank fraud in violation of 18 U.S.C. § 1344. He is scheduled to be sentenced on January 5, 2005. As the Court is well aware, the bank fraud charge against Hoblin arose out of a scheme to defraud Fleet Bank which Hoblin and his co-schemers, Ralph F. Vitale, and Peter J. Trantino, devised and engaged in from approximately January 1996 through April 1996.[1]

At sentencing, the defendant, Charles J. Hoblin, faces a maximum penalty of 30 years imprisonment and a $1,000,000 fine on each count. The Probation Office has completed a

---

[1] Vitale was convicted of five counts of bank fraud, in violation of 18 U.S.C. § 1344, after a jury trial which concluded on May 11, 2004. See United States v. Vitale, Crim. No. 3:02CR262(RNC). On August 16, 2004, Vitale was sentenced to 51 months in prison, to be followed by 5 years of supervised release, and ordered to pay restitution to Fleet Bank in the amount of $323,000. Peter J. Trantino pleaded guilty on July 24, 2003 to bank fraud and on June 17, 2004, in recognition of his substantial assistance to the Government, was sentenced to three years of supervised release, 125 hours of community service, and to pay $12,000 in restitution to Fleet Bank.

presentence report ("PSR") in which it has calculated the defendant's guidelines imprisonment range at 37 to 46 months, PSR at ¶ 110, and has recommended against a two level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. PSR at ¶¶ 67, 76. The calculations in the PSR are based on the 1995 United States Sentencing Commission Guidelines Manual (hereafter "the Guidelines") due to *ex post facto* concerns that would arise from application of a later version of the Guidelines. PSR at ¶ 68. The defendant's Guidelines imprisonment range of 37 to 46 months begins with a base offense level of 6, U.S.S.G. § 2F1.1, and is increased by the following enhancements under the 1995 Guidelines: 9 levels for loss and relevant conduct, PSR at ¶ 70; <u>see</u> U.S.S.G. § 2F1.1(b)(1)(J) & Application Note 7; 2 levels for more than minimal planning, PSR at ¶ 71; <u>see</u> U.S.S.G. § 2 Fl.1(b)(2); and 2 levels for abuse of a position of trust, PSR at ¶ 72; <u>see</u> U.S.S.G. § 3B1.3. The Probation Office recommends against giving the defendant a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, based on the defendant's repeated false statements to law enforcement officers, the grand jury and at trial. PSR at 67. In addition, the Probation Office recommends an additional two-point increase for obstruction of justice under U.S.S.G. § 3C1.1 based on the defendant's false statements during the investigation and prosecution of this case. As explained below, in the Government's view, the Probation Office has correctly calculated the defendant's applicable Guidelines range.

**ARGUMENT**

**I.**     **Sentencing Enhancements**

    **A.**     **Loss and Relevant Conduct**

The Government agrees with the loss of $468,507 calculated by the Probation Office as

2

attributable to defendant Hoblin's offense and relevant conduct.  PSR at ¶ 65.  <u>See also</u> U.S.S.G. § 2Fl.1, Application Note 7(b) (in fraudulent loan application cases, "the loss is the amount of the loan not repaid at the time the offense is discovered reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan. However, where the intended loss is greater than the actual loss, the intended loss is to be used.") U.S.S.G. § 2F1.1, Application Note 7(b) (emphasis added); <u>United States v. Jacobs</u>, 117 F.3d 82, 98 (2d Cir. 1997)("Ultimately, intended loss is dependent on the findings of the trial judge.").

From the evidence presented at trial, as described in paragraphs 18 through 27 of the PSR, the defendant plainly counseled and substantially assisted in the filing of the Endura Jet loan.  That evidence establishes a sufficient nexus between the charged and uncharged Endura Jet loan for the Court to find that the loss from the Endura Jet loan should be included in relevant conduct.  <u>See</u> <u>United States v. Williams</u>, 10 F.3d 910, 913 (1st Cir. 1993); <u>United States v. Bennett</u>, 37 F.3d 687, 694 (1st Cir. 1994).

Except on the grounds of <u>Blakely</u>, which is addressed, <u>infra</u>, the defendant Hoblin does not dispute the amount of loss for sentencing Guidelines purposes.  Thus, the Court should find that the loss attributable to defendant Hoblin is more than $350,000 for purposes of the 9-level enhancement under U.S.S.G. § 2F1.1(b)(1)(J).

**B.    <u>More Than Minimal Planning</u>**

"More than minimal planning means more planning than is typical for commission of the offense in a simple form." U.S.S.G. § 2B1.1, Application Note 1(f); <u>see</u> U.S.S.G. § 2F1.1, Application Note 2.  "'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune."

3

U.S.S.G. § 1B1.1, Application Note 1(f).  The defendant substantially assisted in the preparation and filing of five false and fraudulent loan applications.  He took several affirmative steps to make each loan application appear legitimate, including using his tax preparation clients (without their knowledge and consent) as the purported owners of the supposed businesses applying for the loans, and using their personal identifying information and tax returns for filing with the loans.  He additionally helped create elaborate false and fraudulent business tax returns to accompany the loans.  To conceal his participation in the fraud, and to avoid raising a red flag with Fleet Bank by his involvement with the loans, Hoblin further removed his name and business address from his clients' tax returns and inserted the names and business addresses of other accountants and tax preparation firms in Connecticut.  As the Second Circuit has explained, "it is safe to say that fraudulent loans in any substantial amount seldom result from minimal planning." United States v. Brach, 942 F.2d 141, 145 (2d Cir. 1991)(fraudulent loan based on false financial statement).   Plainly, the creation of the loan application packages in this case was not typical for the commission of the crimes in their simple forms.   Further, the defendant and his co-schemers caused the submission of several fraudulent loan applications over a period of time. Therefore, the two-level enhancement for more than minimal planning should be applied.

     **C.**    **Abuse of Position of Trust**

     A two level enhancement is applicable due to Hoblin's use of a special skill or abuse of a position of trust in committing the crime as provided in § 3B1.3.  The enhancement is applied both in cases where the defendant has abused a position of  "public or private trust characterized by professional or managerial discretion" or where the defendant has "used a special skill not possessed by members of the general public." U.S.S.G. § 3B1.3 Application Note 1-2.

4

"[T]he primary trait that distinguishes" a position of trust from other positions is "the extent to which the position provides the freedom to commit a difficult-to-detect wrong." United States v. Viola, 35 F.3d 37, 45 (2d Cir. 1994). The Second Circuit does not use a mechanistic approach based on job titles in applying the enhancement. See United States v. Barrett, 178 F.3d 643, 646 (2d Cir. 1999) (noting that adjustment has been applied to police officers, security guards, babysitters, custodians and truck drivers). Rather, the Court looks to several factors: "(1) whether the defendant had either special duties or special access to information not available to other employees; (2) the extent of discretion the defendant possesses; (3) whether the defendant's acts indicate that he is more culpable than others who are in positions similar to his and who engage in criminal acts; and (4) viewing the entire question of abuse of trust from the victim's perspective." United States v. Akinkoye, 185 F.3d 192, 203 (2d Cir. 1999). Thus, whether the position is one of trust is to be viewed from the perspective of the offense victims. United States v. Wright, 160 F.3d 905, 911 (2d Cir. 1998). When the enhancement is applied for use of a special skill, the government must show that the defendant possessed the requisite skill and that the defendant used or intended to use the skill in the facilitation of the crime. United States v. Downing, 297 F.3d 52, 64-65 (2d Cir. 2002).

In the present case, the defendant admitted that he is an accountant/bookkeeper and tax return preparer. As such, he had unique access to personal identifying, financial and tax information of his clients and he has admitted that he used that information entrusted to him by his clients in the commission of the instant offense. See United States v. Morris, 350 F.3d 32, 38 (2d Cir. 2003) (upholding application of adjustment to home health aide who used "her continuous access to the homes of her elderly and mentally disabled victims, and [her] relatively

5

unsupervised discretion over their daily care" to "misappropriate their personal information");

Akinkoye, 185 F.3d at 203 (upholding application of adjustment to real estate agent who used

personal information provided by clients, as well as keys to their homes, to acquire dozens of

credit cards in their names). Hoblin abused the trust of his clients by disclosing and using their

personal, financial and tax return information (and tax returns) in the commission of this crime,

and used his accounting knowledge to falsify the loan applications. Thus, the enhancement under

3C1.1 is warranted both because Hoblin abused his position and because he used a special skill

in commission of the crime.

### D.    Obstruction of Justice Enhancement

The application of a two level enhancement for the obstruction of justice is warranted in

this case.  The enhancement applies where a defendant "willfully obstructed or impeded, ... the

administration of justice during the investigation, prosecution, or sentencing of the instant

offense." U.S.S.G. § 3C1.1. The Guidelines set forth the types of conduct to which the

enhancement applies, including the commission of perjury or providing "a materially false

statement to a law enforcement officer" that significantly impedes the investigation. U.S.S.G. §

3C1.1 Application Note 3 (b), (g).

In applying the enhancement, a district court is required to review "the evidence and

make independent findings necessary to establish willful impediment to, or obstruction of,

justice." United States v. Dunnigan, 507 U.S. 87, 95 (1993).  Generally, the court must find both

willfulness and materiality.  United States v. Zagari, 111 F.3d 307, 328 (2d Cir. 1997).  However,

if the pre-sentence report is sufficiently detailed and explicit in its findings, the court may adopt

those findings in reaching its decision.  United States v. Johns, 324 F.3d 94, 97 (2d Cir. 2003).

In the instant case, the PSR details the deceitful and obstructive statements defendant gave during the investigation and prosecution of this case.  See PSR at 66.  For example, before the grand jury, Hoblin indicated that there were no signatures on the loan applications when he provided them to Trantino for filing with Fleet Bank.  However, the evidence presented at trial demonstrated that each application, other than the Our Futures application, bore the signature of the purported applicant when it was given to Trantino.  Hoblin further testified at trial that he had forged at least one of the purported applicants' signatures prior to giving the application to Trantino.  Additionally, during the investigation, Hoblin was interviewed by the Federal Bureau of Investigation ("FBI").  He told the interviewing agent that his business name appeared in the tax preparer blocks on all of the tax returns that accompanied the loan applications, and that he had no idea how the names of other accounting firms came to be on the tax returns.  Before the grand jury, Hoblin testified that Trantino gave him the names of the accountants because Fleet did not want Hoblin involved with any EBB loans.  At trial, Hoblin admitted that he identified the names of the accountants to be used as the tax preparers, and he described the "whiting out and re-typing" process by which those names were put on the returns.  Further, when interviewed by the FBI, Hoblin admitted that he asked several of his clients, whose tax returns he had used without their knowledge and consent, to tell the bank if contacted that they were aware of the loans.  At trial, the clients at issue collaborated this statement.  However, when asked about this at trial, Hoblin claimed he did not ask any of his clients to lie to the bank.  These false statements concern matters material to the investigation and prosecution of this case.  Therefore, the Government supports the Probation Office's recommendation for an obstruction of justice enhancement.

## II.    <u>Acceptance of Responsibility Reduction is Unwarranted</u>

The Government's agreement to recommend a reduction for acceptance of responsibility is likewise conditioned on the defendant's *"full, complete, and truthful* disclosure . . . of the circumstances surrounding his commission of the offense" as well as his *"affirmative acceptance of personal responsibility"* for the offense.  <u>See</u> Plea Letter dated October 1, 2001 at 3, attached to PSR (emphasis added).  The defendant's false statements to the government, to the grand jury and at trial are inconsistent with these obligations.  Because of Hoblin's continued refusal to admit and accept responsibility for the full scope of his wrongful conduct, he is not entitled to a reduction in his offense level for acceptance of responsibility.

Section 3E1.1(a) provides that a defendant is entitled to a two level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense. . . ."  U.S.S.G. § 3E1.1(a).[2]  In determining whether the defendant qualifies for a two level reduction, the sentencing court should consider, among other things, whether the defendant has "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct. . . ."  U.S.S.G. § 3E1.1, Application Notes 1(a) and (c).  Although entry of a guilty plea prior to trial "combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . .  will constitute significant evidence of acceptance of

_____

[2]  If the offense level prior to an acceptance reduction is at least 16, the defendant is entitled to an additional one level reduction in his offense level if he "has assisted authorities in the investigation or prosecution of his own misconduct by . . . timely providing complete information to the government concerning his own involvement in the offense; or . . . timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial . . . ."  U.S.S.G. § 3E1.1(b).

responsibility . . . .[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." Id. at Application Note 3.   Further, "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." Id. at Application Note 4.   "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. . . . [thus, his] determination . . . is entitled to great deference on review." Id. at Application Note 5.

As the Second Circuit has explained,

> [a] sentencing court's decision to grant or deny a section 3E1.1 reduction depends, in large part, on that Court's determination of the credibility of the defendant. . . . Since the sentencing judge is in a much better position to make the factual assessment of contrition and candor than is an appellate court, . . . the finding of whether the defendant has adequately demonstrated an acceptance of responsibility will not be disturbed unless it is without foundation.

United States v. Rivera, 96 F.3d 41, 43 (2d Cir. 1996) (affirming district court's denial of acceptance of responsibility reduction where defendant pleaded guilty and the Government recommended acceptance of responsibility, but district court did not believe defendant was truly candid and contrite)(internal citations omitted).  Even where the defendant has pleaded guilty "the court may require a candid and full unraveling, and need not accept lies or equivocation." United States v. Reyes, 9 F.3d 275, 280 (2d Cir. 1993) (affirming denial of acceptance of responsibility where defendant pleaded guilty; rejecting defendant's claim that he was entitled to reduction "because the conduct he admitted . . . was legally and factually sufficient to establish the offense of conviction.").[3]

---

[3]    Judge Posner's discussion of acceptance of responsibility in United States v. Wells, 154 F.3d 412 (7th Cir. 1998) is particularly enlightening:

In this case, the defendant's inconsistent and ultimately false statements made during the course of the investigation and prosecution of this case demonstrate that he has failed to accept full responsibility for his conduct. Indeed, the statements indicate an attempt to conceal even three years after his guilty plea the full scope of his involvement in the scheme to defraud Fleet Bank. Hoblin's testimony before the grand jury and at trial as well as statements to law enforcement agents early on reflect equivocation, not full, complete and truthful disclosure. While he admitted at the plea colloquy the essential facts necessary to support the offense of conviction, this is not the candid and full acceptance that U.S.S.G. § 3E1.1 was designed to reward. See Reyes, 9 F.3d at 280. Accordingly, the defendant is not entitled to a reduction for acceptance of responsibility under § 3E1.1.

### III.    *Blakely v. Washington* Does Not Limit the Court's Authority to Apply <u>Upward Adjustments and Sentencing Enhancements Under the Guidelines</u>

The Supreme Court's decision in <u>Blakely</u> has raised issues concerning what factors a court may consider at sentencing. The case involved the Washington state sentencing guidelines. The Supreme Court applied the rule of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000) to invalidate a sentencing enhancement, imposed pursuant to state law, that increased the sentence

---

> The purpose of the acceptance of responsibility discount is not only to induce guilty pleas, but also to identify defendants who, having demonstrated sincere remorse for their crime, are less likely either to delay the course of justice or to engage in further criminal activity when they complete their sentence. [Collecting cases]. Talk is cheap, and so [the caselaw] emphasizes that acceptance of responsibility is to be inferred from deeds, not from weepy mea culpas at sentencing. . . . The remorseful or repentant criminal would want to do everything possible to rectify the harmful consequences of his crime, . . . .

154 F.3d at 413-14 (citations omitted) (cited in <u>United States v. Zichettello</u>, 208 F.3d 72, 107 (2d Cir. 2000) (affirming district court's denial of reduction for acceptance of responsibility where defendant pleaded guilty but reneged on promise to pay restitution from funds available to him).

beyond the range authorized by Washington state's statutory sentencing guidelines regime. The Court explained that, because the facts supporting the enhancement were "neither admitted by [the defendant] nor found by a jury," the sentence violated the Sixth Amendment right to trial by jury. 124 S. Ct. at 2537. <u>Blakely</u> did not invalidate the United States Sentencing Guidelines, nor did it hold that its rule applies to the Guidelines. <u>See</u> 124 S. Ct. at 2538 n.9 ("The Federal Guidelines are not before us, and we express no opinion on them"). Indeed, even in <u>Apprendi</u>, the Supreme Court expressed no view on the Guidelines beyond "what this Court has already held." <u>Id.</u> (citing <u>Edwards v. United States</u>, 523 U.S. 511, 515 (1998)).

The Supreme Court has consistently upheld the Guidelines against constitutional attack and underscored their unique status within our constitutional scheme. <u>See, e.g.</u>, <u>Mistretta v. United States</u>, 488 U.S. 361, 412 (1989) (upholding constitutionality of federal Guidelines and the Sentencing Commission; "Congress neither delegated excessive legislative power [to the Commission] nor upset the constitutionally mandated balance of powers among the coordinate Branches" by placing the Commission within the judicial branch). Indeed, the Supreme Court has found that so long as a sentence does not exceed the statutory maximums established by Congress for the offense of conviction, a Guidelines sentence can (in fact, sometimes must) be based on judge-found conduct not proved to a jury, <u>see</u> <u>Edwards v. United States</u>, 523 U.S. 511, 514-15 (1998); conduct not charged in the indictment, <u>see</u> <u>Witte v. United States</u>, 515 U.S. 389, 399-401 (1995); and conduct of which a defendant is acquitted but is established at sentencing by a preponderance of the evidence. <u>See</u> <u>United States v. Watts</u>, 519 U.S. 148, 156-57 (1997) (<em>per curiam</em>). Moreover, the Court has explicitly held that lower courts are bound not only by the Guidelines, but by their policy statements and commentary as well. <u>See</u> <u>Stinson v. United States</u>,

11

508 U.S. 36, 42 (1993).

In upholding the validity of the Guidelines, the Supreme Court viewed Guidelines enhancements not as "statutory maximums" (requiring proof to a jury beyond a reasonable doubt), but as rules channeling the discretion of judges within congressionally set maximums in the United States Code. Indeed, the Court explicitly said as much in <u>Edwards</u>, which it notably cited with approval in <u>Apprendi</u>:

> Of course, petitioners' statutory and constitutional claims [that the court must base its Guidelines sentence exclusively on the cocaine-only facts found by the jury] would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy. That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines.

<u>Edwards</u>, 523 U.S. at 515; <u>Apprendi</u>, 530 U.S. at 497 n.21; <u>see also</u> <u>Witte</u>, 515 U.S. at 399-400 (although Guidelines enhancement for uncharged conduct resulted in higher Guidelines range than otherwise would have applied, range "still falls within the scope of the legislatively authorized penalty" and is thus constitutionally permissible); <u>Mistretta</u>, 488 U.S. at 396 (Guidelines "do not . . . establish[] minimum and maximum penalties" for crimes).

Nonetheless, since the <u>Blakely</u> decision, there has been a conflict in the Circuits on whether the Federal Sentencing Guidelines remain valid. <u>See</u> <u>United States v. Booker</u>, 375 F.3d 508 (7th Cir.)(reversing sentence and holding that under <u>Blakely</u>, defendant is entitled to jury fact-finding regarding drug quantity and obstruction of justice beyond a reasonable doubt), *cert. granted,* 125 S. Ct. 11 (2004); <u>United States v. Fanfan</u>, No. 03-47, 2004 WL 1723114 (D. Me.) (ruling based on <u>Blakely</u> that defendant's Sixth Amendment rights would be violated if sentence was based on findings of fact not made by jury, but that jury's failure to determine which drugs were attributable to the defendant was harmless error and sentencing defendant in accordance

12

with the Federal sentencing guidelines), *cert. granted*, 125 S. Ct. 12 (2004). Importantly,

however, the Second Circuit has directed that <u>Blakely</u> does not apply to the Federal Sentencing

Guidelines until the Supreme Court rules otherwise. <u>See</u> <u>United States v. Mincey</u>, 380 F.3d 102,

106 (2d Cir. 2004) (*per curiam)*. <u>See also</u> <u>State Oil Co. v. Khan</u>, 522 U.S. 3, 20 (1997) ("it is

[the Supreme Court's] prerogative alone to overrule one of its precedents").

     In <u>Mincey</u>, the Second Circuit expressly rejected the argument "that, in this Circuit, the

Sixth Amendment now requires every enhancement factor that increases a Guidelines range to be

pleaded and proved to a jury beyond a reasonable doubt." <u>Mincey</u>, 380 F.3d at 105-106.

Importantly, the Second Circuit held:

> [u]nless and until the Supreme Court rules otherwise, the law in this Circuit remains as
> stated in [<u>United States v. Garcia</u>, 240 F.3d 180, 184 (2d Cir. 2001) (holding that a
> Guidelines factor that is "unrelated to a sentence above a statutory maximum . . . may be
> determined by a sentencing judge and need not be submitted to a jury.") and <u>United States
> v. Thomas</u>, 274 F.3d 655, 664 (2d Cir.) (in banc) (same), <u>cert. denied</u>, 531 U.S. 1069
> (2001)] and our other related case law. We conclude that the district court did not err in
> sentencing defendants in accordance with the Guidelines as previously interpreted by this
> Court.
>
>          *    *    *
>
> In so holding, we expect that, until the Supreme Court rules otherwise, the courts of this
> Circuit will continue fully to apply the Guidelines.

<u>Id.</u> At 106. <u>See also</u> <u>United States v. Thorn</u>, 317 F.3d 107, 124 (2d Cir.) (ordinary upward

adjustments and departures under the Federal Sentencing Guidelines may be made by the

sentencing court based on a preponderance of the evidence, provided they do not result in a

sentence that exceeds that maximum statutory penalty), <u>cert. denied</u>, 538 U.S. 1064 (2003);

<u>United States v. Norris</u>, 281 F.3d 357, 359 (2d Cir.), <u>cert. denied</u>, 536 U.S. 949 (2002)(same).

     Based on the Second Circuit's recent directive in <u>Mincey</u>, and well-established Second

Circuit and Supreme Court precedent, this Court should sentence defendant Hoblin in accordance with the Guidelines including applying the sentencing enhancements and upward adjustments recommended by the Probation Office.

**IV.    Defendant's Downward Departure Requests Should Be Denied**

Defendant seeks a downward departure from the Guidelines based on multiple factors: age, physical condition, mental and emotional condition, employment history, and family circumstances.  In general, a sentencing court may not depart from the applicable Guidelines range unless "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1); U.S.S.G. § 5K2.0 (Policy Statement).   To justify a departure, the court must find that the Sentencing Commission has not given a particular factor adequate consideration in light of unusual circumstances, or an offender's characteristic or other circumstance not ordinarily relevant to a departure is present to an unusual degree and distinguishes the case "significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing."  See U.S.S.G. § 5K2.0 (Policy Statement and Commentary).  U.S.S.G. § 5K2.0.  The defendant bears the burden of establishing that he should receive a downward departure.  See United States v. Silleg, 311 F.3d 557, 564 (2d Cir. 2002).[4]

---

[4]  Previously, a district court's decision whether to depart from the Guidelines range was subject to review for "abuse of discretion." See Koon v. United States, 518 U.S. 81, 98 (1996). The PROTECT Act, effective April 30, 2003, now requires de novo review of a sentencing court's determination "whether a departure is 'justified by the facts of the case.'" United States v. Simmons, 343 F.3d 72, 78 (2d Cir. 2003) (quoting PROTECT Act § 401(d)(2)).

In this case, the defendant's proffered grounds for departure - - most of which are discouraged by the Guidelines - -  whether viewed separately or in combination, do not justify a downward departure from the applicable Guidelines range.

### A.    Age and Physical Condition

While not ordinarily relevant to a departure determination, "[a]ge may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm." U.S.S.G. § 5H1.1.  Similarly, a defendant's physical condition also is not ordinarily relevant, although "an extraordinary physical impairment" may support a departure.  U.S.S.G. § 5H1.4.  Where the Guidelines discourage departure on the basis of a factor, such as age, departure is warranted  "only if the factor is present to an exceptional degree" Koon, 518 U.S. at 96.  Courts have granted departures where a defendant's age and medical condition make incarceration unnecessarily life threatening, see United States v. Gigante, 989 F. Supp. 436, 442-443 (E.D.N.Y. 1998) (collecting cases).  This is not such a case.

At present, Hoblin takes medication for high blood pressure and cholesterol. PSR ¶ 90.  While he had a heart attack in 1987, it appears that his condition is stable and that it can be maintained by the Bureau of Prisons while he is incarcerated.  Hoblin is not exceptionally frail, nor does his age combined with his medical condition make incarceration especially dangerous for him.[5]  Nor do the cases he cites support his claim.  See Def. Memo. at 5-6 (Citing e.g., United States v. Gee, 226 F.3d 885, 901 (7th Cir. 2000) (affirming downward departure supported by

---

[5]  Hoblin filed a supplemental memorandum filed December 28, 2004, attaching a letter from his doctor regarding the effects of his Diabetes Mellitus.  The Government submits that the problems raised in the letter do not make Hoblin appear exceptionally frail or incarceration especially dangerous for him.

court's review of 500 pages of medical records, videotaped testimony of the defendant's

cardiologist, and finding that incarceration posed a substantial risk to defendant's life); United

States v. Johnson, 71 F.3d 539, 5454 (6th Cir. 1995) (remanding for more thorough factfinding on

medical condition where 65-year-old defendant claimed to suffer from diabetes, hypertension,

hypothyroidism, ulcers, reactive depression; holding that while proffered grounds *may* support

departure such cases are "rare" and sentencing court must find defendant's condition constitutes

an "extraordinary physical impairment" before departing)).  If anything, these cases simply

magnify the comparatively unexceptional nature of Hoblin's physical condition.  Therefore,

Hoblin's age and physical condition do not justify a departure in this case.

### B.    Mental and Emotional Problems

Because a defendant's mental or emotional condition is a discouraged basis for departure,

the condition must be present to an extraordinary degree to support such a departure.  See United

States v. Kim, 313 F. Supp. 2d 295, 300 (S.D.N.Y. 2004) (citing U.S.S.G. §5H1.3).  In the

instant case, Hoblin claims he suffers from continuing depression as a result of the investigation

and his prosecution for this offense, and during the course of the investigation he experienced

suicidal ideation which resolved with counseling.  See Def. Memo. at 5; PSR at ¶¶ 89-92.[6]

---

[6] To the extent defendant seeks a downward departure based on diminished mental capacity under 5K2.13, the facts in this case also would not support a departure on these grounds. The defendant has not and cannot show a "significantly reduced mental capacity" as defined in the Guidelines.  See U.S.S.G. § 5K2.13.  Nor can he demonstrate any *causal relationship* between his alleged depression and his criminal conduct.  See U.S.S.G. § 5K2.13 (defendant must show he "committed the offense while suffering from a significantly reduced mental capacity.").  United States v. Prescott, 920 F.2d 139, 146 (2d Cir. 1990) (once a "reduced mental capacity" has been established, defendant must next prove a causal link, or nexus, between reduced capacity and commission of the charged offense.).

However, defendant's depression or brief suicidal ideation are not so unusual or exceptional to justify a departure in this case. Indeed, defendant's mental and emotional problems are plainly no worse or exceptional than reflected in cases in which the Court of Appeals has affirmed denials of departures. See, e.g., United States v. Rivera, 192 F.3d 81, 85 (2d Cir.1999) (holding that abuse suffered as a child, ranging from beatings to lack of supervision, was not exceptional to warrant a downward departure); United States v. Barton, 76 F.3d 499, 501 (2d Cir 1996) (letter by treating psychiatrist indicating that defendant suffered from depression and anxiety did not establish that defendant suffered from extraordinary mental condition to warrant downward departure) Psihountas v. United States, 2000 WL 739548 (S.D.N.Y. 2000) (finding that diagnosed depression did not entitle defendant to downward departure for diminished capacity). Indeed, these cases demonstrate that defendant's current mental status, particularly where it is claimed that depression and anxiety results from the criminal investigation and prosecution, is more the norm than the exception. Accordingly, the Court should deny defendant's request for a downward departure on this basis.

### C.  **Employment History**

Like the other factors cited by defendant, "[e]mployment record is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.5. In this case, Hoblin has not proffered any exceptional circumstance of his employment which would justify a departure. In fact, he used his current employment, with unique access to his clients' personal and financial information, to commit the instant offense. Thus, the Court should deny a departure on this ground.

D.    **Family Circumstances**

Likewise, family ties and responsibilities ordinarily are not a proper basis for departure

from the applicable guideline range, and may only serve as a basis for departure if present to an

exceptional degree.  U.S.S.G. § 5H1.6. See United States v. Sprei, 145 F.3d 528, 533 (2d Cir.

1998); United States v. Carrasco, 313 F.3d 750, 756 (2d Cir. 2002); United States v. Johnson,

964 F.2d 124, 128-29 (2d Cir. 1992).  The Second Circuit has held that "[d]isruption of the

defendant's life, and the concomitant difficulties for those who depend on the defendant, are

inherent in the punishment of incarceration."  Johnson, 964 F.2d at 128 (downward departure

affirmed based on extraordinary family responsibilities where defendant was solely responsible

for upbringing of three young children, including an infant and young child of her

institutionalized daughter).  Thus, a downward departure for family circumstances "must be

reserved for situations that are truly extraordinary."  United States v. Walker, 191 F.3d 326, 338

(2d Cir. 1999).

While the Second Circuit has recognized family circumstances as a ground for departure,

the Court has supported such departures only where it is clearly established that the defendant is

a unique source of financial and/or emotional support for a significant number of dependants.

See e.g., United States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997) (upholding departure

where defendant provided substantial support for two children and defendant's wife spoke

limited English); United States v. Alba, 933 F.2d 1117, 1122 (upholding departure where

defendant's family depended on him, his grandfather depended on him to help him get in and out

of his wheelchair, yet he had enough time to work two jobs to maintain the family's well-being.

Compare United States v. Faria, 161 F.3d 761, 762 (2d Cir. 1998) ("we have upheld downward

departures based on family circumstances 'where the family was uniquely dependent on the defendant's ability to maintain existing financial and emotional commitments"'; denying departure request) (quoting Sprei, 145 F.3d at 535)). United States v. Maurer, 76 F. Supp. 2d 353, 362 (2d Cir. 1999)(denying departure where defendant "did not provide the sole financial or emotional support for his family.").

The Second Circuit has upheld denials of departure requests in more compelling circumstances than presented in this case.  See e.g., United States v. Castano-Vargas, 124 F. Supp. 2d 185, 192 n.16 (2d Cir. 2000) (affirming denial of departure based on defendant's strong family ties and that he was the only financial and emotional support for his wife and eight-year-old daughter); United States v. Smith, 331 F.3d 292, 294 (2d Cir. 2003) (denying departure where defendant was not sole caregiver or financial supporter of his son, wife would likely be required to postpone her college studies and seek to supplement her income, and defendant's mother and half-sister could help with child care);  United States v. Madrigal, 331 F.3d 258, 260 (2d Cir. 2003) (denying departure where only one of defendant's six children was under 18, and extended family was available for caregiving);  Carrasco, 313 F.3d at 757 (denying departure for father of three children who is separated from wife and has an ailing father).

In this case, Hoblin claims he is the sole support of his wife, Eileen, who is 76 years old and physically "limited."  He does not have any dependent children to support and in fact has two grown children, a son and a daughter.  See PSR at 87.  It has not been shown that his daughter and/or son could not support their mother during any period of incarceration.[7]  Plainly, these

---

[7]  His daughter is the legal owner of the house where Hoblin and his wife reside in Chester.  The $1200 per month rent they pay their daughter appears to be their largest living

circumstances are not unique and certainly not exceptional to a degree to take this case out of the heartland of the Guidelines.  Thus, the departure request on this ground should be denied.

### E.      Substantial Assistance to the Government

Hoblin further claims he should also be rewarded with a downward departure based on his substantial assistance to the Government in this case.  See Def. Memo at 9-10.[8]  It is the provision of "substantial assistance in the investigation or prosecution of another person who has committed an offense" which gives rise to a potential downward departure, and, only after the Government files a motion pursuant to U.S.S.G. § 5K1.1.  See United States v. Gonzalez, 970 F.2d 1095, 1102 (2d Cir. 1992); United States v. Agu, 949 F.2d 63, 67 (2d Cir. 1991); United States v. Reina, 905 F.2d 638, 641 (2d Cir. 1990).  In fact, the Second Circuit has explicitly "rejected the proposition that cooperation can be separated into its benefit to the prosecution and its evidence of contrition, with a sentencing judge free to assess the latter as a grounds for departure in the absence of a Government motion."  Gonzalez, 970 F.2d at 1102-03.  "Although a sentencing Judge is in a good position to assess the moral worthiness, contrition, and rehabilitation of a defendant, § 5K1.1 precludes reliance on a defendant's cooperation with the Government as a basis for a departure in the absence of a Government motion."  Id. at 1103; see also Agu, 949 F.2d at 66.  See also Korman, 343 F.3d at 631 (holding that provision of routine testimony, while helpful in prosecution of another individual, could not serve as basis of departure under § 5K2.0).

_____

expense.

    [8]  Defendant also claims he is entitled to some relief because he was intimidated by his co-schemer, Ralph Vitale.  The claim is inconsistent with his testimony before the grand jury.

In this case, although the defendant initially agreed to cooperate with the Government, he thereafter lied about material facts to law enforcement agents, to the grand jury, and was not forthcoming at trial. His unwillingness to provide complete and truthful information regarding the offense and his involvement therein negates his entitlement to a downward departure based on substantial assistance. Indeed, the Government advised the defendant long before trial that his "cooperation" was not considered worthy or substantial to warrant the filing of a motion under § U.S.S.G. 5K1.1. Accordingly, his request for a downward departure on this ground in the absence of a motion filed by the Government should be rejected.

### F.    Combination of Above Factors

The Government submits that the above factors - - whether viewed individually or in combination - - do not take this case out of the heartland of Guidelines fraud cases. Accordingly, the defendant's request for downward departure should be denied.

### V.    If the Court Holds that *Blakely* Precludes Application of the Guidelines Based on Judge-Made Factual Findings Necessary to Calculate Sentencing Enhancements, Then the Court Should Impose a Sentence Within the Statutory Maximum With Due Regard to the Sentences Prescribed by the Guidelines for Similar Offenses.

If this Court disagrees with the Government's argument and holds that Blakely applies to the Guidelines, then the Court must decide how sentencing is to be conducted. The Guidelines contain many "enhancement" provisions -- i.e., provisions that provide for a higher offense level or that authorize an upward departure from a defendant's Guidelines sentencing range based on particular factual findings. If Blakely applies to the Guidelines, and absent a waiver by the defendant, those enhancement provisions generally could be applied in a given case only if,

contrary to the current system of judge-made findings, the necessary facts have been charged and found by a jury beyond a reasonable doubt. By contrast, provisions that *reduce* a defendant's sentencing range or authorize a downward departure, however, could still be applied, as intended, by a court at sentencing based on findings by a preponderance of the evidence. See Harris v. United States, 536 U.S. 545 (2002); See also Blakely, 124 S. Ct. at 2538 (rule does not apply to cases involving "sentencing scheme[s] that imposed a statutory minimum if a judge found a particular fact") (citing McMillan v. Pennsylvania, 477 U.S. 79 (1986)).

A requirement that enhancing -- but not reducing -- facts have to be submitted to the jury and proven beyond a reasonable doubt would distort the operation of the sentencing system in a wholesale manner that was neither contemplated nor intended by Congress or the Sentencing Commission. Accordingly, rather than attempting to apply the Guidelines with a "Blakely overlay" of jury factfinding, a court should simply conclude that the parts of the Guidelines system that are unconstitutional (the finding of sentence-enhancing facts by a sentencing judge using a preponderance-of-evidence standard of proof) are inseverable from the Guidelines as a whole. The result is that, in any case in which Blakely precludes judicial factfinding under the Guidelines, statutory severability analysis instructs that the Guidelines as a whole should be invalidated as a binding set of rules governing sentences that must be imposed.

Accordingly, should the Court find that Blakely precludes judicial factfinding under the Guidelines, the Court should revert to indeterminate sentencing giving due consideration to what sentence would be imposed under the Guidelines for similar offenses.

**VI.    The Court Should State Alternative Sentences.**

In light of the considerable uncertainty as to how the Supreme Court will effectuate the <u>Blakely</u> decision, the Government respectfully recommends that the Court state at sentencing the sentence it would have imposed if it applied different possible methodologies.  Specifically, the Court should make clear what sentence it would impose (1) under the Guidelines without regard to <u>Blakely</u>; (2) under the Guidelines if <u>Blakely</u> applies to sentence-enhancing facts; and (3) under pre-Guidelines indeterminate sentencing principles, with due regard to what the pre-<u>Blakely</u> Guidelines sentence would otherwise be.  By making clear what sentence would be imposed under alternative methodologies, the Court may significantly clarify the record in the event of any appellate review.

**CONCLUSION**

In the Government's view, the Probation Office has calculated the defendant's Guidelines sentencing range correctly.  For the above reasons, the Government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 37 to 46 months.

                              Respectfully submitted,
                              KEVIN J. O'CONNOR
                              UNITED STATES ATTORNEY

                              LISA E. PERKINS
                              ASSISTANT UNITED STATES ATTORNEY
                              450 MAIN STREET
                              HARTFORD, CONNECTICUT 06103
                              (860) 947-1101
                              FEDERAL BAR NO. ct23164

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the within and foregoing has been served via first class United States mail, postage prepaid, this 30th day of December, 2004, to:

Frank J. Riccio, Esq. (also via overnight mail)

923 East Main Street

Bridgeport, CT 06608-1914


Otto Rothi (also via hand delivery)

United States Probation Officer

450 Main Street

Hartford, CT 06103


_____

LISA E. PERKINS

ASSISTANT UNITED STATES ATTORNEY